[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**AUGUST 19, 2003**
**THOMAS K. KAHN**
**CLERK**

No. 01-14474

D.C. Docket No. 00-08950-CV-DMM

THOMAS R. FARESE,

Plaintiff-Appellant,

versus

KENNETH J. SCHERER,
CHARLES I. COHEN, individually, et. al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

(August 19, 2003)

Before BARKETT and KRAVITCH, Circuit Judges, and FULLAM*, District Judge.

* Honorable John P. Fullam, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

PER CURIAM:

Plaintiff-appellant Thomas R. Farese, a federal prisoner proceeding pro se, appeals the district court's sua sponte dismissal of his consolidated action, consisting of two civil cases alleging violations of 18 U.S.C. § 1961; 42 U.S.C. §§ 1985(2), 1985(3), and 1986; the First, Fifth, and Fourteenth Amendments to the United States Constitution; and state law.

## I.    FACTS

Both suits—a civil rights case and a Racketeer Influenced and Corrupt Organizations Act ("RICO") case—stem from prior business relationships and litigation between Farese and defendant-appellee Harold Dude, involving Florida Ventures, a company that operated a nightclub, Club Diamonds, in West Palm Beach, Florida.  Dude was the majority shareholder and Farese a minority shareholder of Florida Ventures. Farese's son-in-law, Glen Agostinelli, also a minority shareholder, was employed as the manager of Club Diamonds.

Prior to the current litigation, Farese and other shareholders of Florida Ventures had filed lawsuits against Dude alleging theft, misappropriation, fraudulent conversion, and breach of fiduciary duty based upon Dude's control of the club and the company's financial accounts.  Defendants-appellees Charles I. Cohen and

2

Kenneth J. Scherer and their law firms defended Dude in these actions.

In his current civil-rights complaint, Farese alleged that Dude, his attorneys Cohen and Scherer, and his attorneys' law firms (collectively, the "Defendants") participated in conspiracies to intimidate, threaten, injure, and treat him adversely in an effort to force him to withdraw his prior lawsuits against Dude. Specifically, Farese alleged that (1) Dude personally made several threats designed to coerce him into abandoning his lawsuits; (2) Dude and Scherer threatened him by stating that Agostinelli would be terminated from his job unless Farese withdrew his lawsuits; (3) Dude eventually suspended and then terminated Agostinelli because Farese refused to dismiss his suits; (4) Dude deducted money from Agostinelli's paycheck because Dude had to attend a deposition in Farese's shareholder case; and (5) the Defendants deprived Farese, individually, and as a member of a "prisoner class," of his constitutional right of access to the courts.

Farese's civil-rights complaint also alleged that Dude filed for bankruptcy, placing Club Diamonds and Florida Ventures into bankruptcy, and that when Farese filed an adversary action in the bankruptcy case to affect placement of assets, the Defendants filed malicious and frivolous lawsuits against members of Farese's family in order to (1) intimidate and threaten him and his subpoenaed witnesses; (2) obstruct judicial proceedings; and (3) block his access to the courts. Farese sought an

injunction prohibiting the alleged threats and intimidation, jury-determined compensation, punitive damages, costs, and attorney's fees should he retain an attorney.

In his RICO complaint, Farese asserted violations flowing from a conspiracy among Dude and his attorneys to loot companies of which Farese was a shareholder and creditor. The conspiracy allegedly involved (1) Dude's fraudulent transfer of Club Diamonds to an alter ego, while placing Florida Ventures into bankruptcy after creating a false appearance that Florida Ventures was insolvent; (2) Dude's and his attorneys' concealment of Florida Ventures's assets from the bankruptcy trustee and submission of false documents to conceal money laundering in another bankruptcy case; and (3) the attorneys' facilitation of perjury, obstruction of justice, bankruptcy fraud, and the use of the courts to defraud Farese of property and business.

Farese's civil-rights case was referred to a magistrate judge for pre-trial administration. Subsequently, Farese notified the district court of the pendency of his RICO case, and the district court consolidated the two actions, assigning the civil-rights docket number to the consolidated action. The district court then granted Farese's motion to proceed in forma pauperis ("IFP") in his civil-rights action.[1]

On 6 June 2001, the district court conducted a sua sponte review of the entire

_____

[1] Farese paid the appropriate filing fee for the RICO suit.

4

record and dismissed the consolidated cases. The district court noted that Farese proceeded IFP in the civil-rights case but paid the appropriate filing and service of process fees when he filed the RICO complaint. Nevertheless, the district court determined that when the cases were consolidated, Farese was "proceeding [IFP] in the RICO claim as well." The district court then dismissed the consolidated case sua sponte, citing § 1915(d)[2] of the Prison Litigation Reform Act ("PLRA"), which formerly governed IFP proceedings.

In applying § 1915(d), the district court concluded that Farese's claims had no basis in law or in fact. The district court determined that (1) Farese lacked standing to assert alleged wrongs taken against his family members; (2) his other claims sought to re-argue matters addressed in previous lawsuits or to raise matters pending in other cases in other courts; (3) his complaints, if taken as true, did not state any claim upon which relief could be granted; (4) a private attorney who acts within the scope of the representation does not act pursuant to any state authority; (5) Farese failed to provide evidence of the alleged conspiracies; and (6) his prisoner status did not constitute membership in a protected class within the meaning of § 1985(3).

Following the district court's dismissal, Farese submitted a verified first amended complaint. Farese also filed a motion to alter or amend the judgment

_____

[2] As explained later, § 1915(e)(2) replaced § 1915(d).

5

pursuant to Federal Rule of Civil Procedure 59(e), asserting that the district court improperly dismissed his pro se complaint without offering him notice and an opportunity to amend or cure any defects. The district court stamped "DENIED" on the motion to alter or amend the judgment. Farese timely appealed. While Farese's appeal was pending, Cohen and his law firm filed a motion for an award of damages and costs, including appellate attorney's fees, pursuant to Federal Rule of Appellate Procedure 38, arguing that Farese's appeal was frivolous.

## II.  ANALYSIS

On appeal, the main issues presented are (1) whether the district court properly dismissed Farese's fees-paid RICO claim under the PLRA; (2) whether the district court properly dismissed Farese's § 1985 claims; and (3) whether Cohen and his law firm are entitled to damages and costs under Federal Rule of Appellate Procedure 38.[3]

### A.  Dismissal of Farese's Fees-Paid RICO Case

Farese argues that the district court erred when it dismissed his fees-paid RICO

---

[3] Farese also appeals the district court's denial of his Rule 59(e) motion. Having reviewed the district court's sua sponte dismissal of Farese's consolidated action, however, we need not address separately the court's Rule 59(e) ruling.

case consolidated with his IFP civil-rights case pursuant to 28 U.S.C. § 1915(d).[4]

Farese contends that he paid the filing fee in his RICO action and disputes the district court's determination that because of the consolidation, he had "been proceeding [IFP] in the RICO claim." While conceding that § 1915, which allows sua sponte dismissals, "may apply to the civil rights action," he argues that this section does not govern his RICO claim and requests that his fees-paid RICO claim be reinstated.[5]

---

[4] The district court based its decision upon § 1915(d), which was replaced by § 1915(e)(2) effective 26 April 1996. Section 1915(d) permitted sua sponte dismissals of frivolous and malicious complaints where the plaintiff proceeded IFP. The district court's error in citing to the former statute was harmless because the district court articulated standards, such as failure to state a claim and frivolity, that currently are listed in § 1915(e)(2)(B). Thus, for purposes of this appeal, we assume that the district court dismissed Farese's consolidated cases pursuant to § 1915(e)(2)(B).

[5] Because of the language used in the district court's order, Farese argues that the district court based its sua sponte dismissal on § 1915(e)(2)(B)(ii). Relying on Judge Lay's concurring opinion in Mitchell v. Farcass, 112 F.3d 1483 (11th Cir. 1997), Farese argues that § 1915(e)(2)(B)(ii) violates an IFP plaintiff's equal-protection and due-process rights because it allows courts to dismiss IFP cases sua sponte based on a failure to state a claim, although identical complaints filed by a fee-paying plaintiff receive the benefits of an adversary proceeding. In Mitchell, Judge Lay concurred in the majority opinion but wrote separately to note his concern about the constitutionality of § 1915(e)(2)(B)(ii). See Mitchell, 112 F.3d at 1490 (Lay, J., concurring). Because § 1915(e)(2)(B)(ii) strips the protections of the Federal Rules of Civil Procedure only from IFP plaintiffs, Farese argues that IFP plaintiffs are denied equal protection and due process.

Farese's argument, however, is foreclosed by Vanderberg v. Donaldson, 259 F.3d 1321 (11th Cir. 2001). In Vanderberg, the district court sua sponte dismissed the IFP-plaintiff's case under § 1915(e)(2)(B)(ii). On appeal, the plaintiff in Vanderberg argued that § 1915(e)(2)(B)(ii) was unconstitutional, facially and as applied. See Vanderberg, 259 F.3d at 1323. Specifically, the plaintiff argued that § 1915(e)(2)(B)(ii) denied indigent litigants an equal opportunity to present meaningful grievances and that the section violated due process because indigent litigants were not given an opportunity to be heard before dismissal. See id. Using a rational-basis analysis, the Vanderberg court concluded that § 1915(e)(2)(B)(ii) "is rationally related to the government's legitimate interests in deterring meritless claims and conserving judicial resources and, therefore, does not violate the Equal Protection Clause." Id. at 1324. Additionally, the court stated that due process "does not always require notice and the opportunity to be heard" and, thus, "[t]he complained of procedure [sua sponte dismissal under § 1915(e)(2)(B)(ii)] did not deny Plaintiff due

"We review the district court's findings of fact for clear error and its legal conclusions de novo."  Falken v. Glynn County, 197 F.3d 1341, 1345 (11th Cir. 1999).  "The district court's interpretation of the PLRA is a statutory finding and constitutes a question of law, which is reviewed *de novo*."  Hubbard v. Haley, 262 F.3d 1194, 1196 (11th Cir. 2001).

Entitled "Proceedings in forma pauperis," § 1915 governs IFP proceedings. Section 1915 allows prisoners to proceed in a suit without "prepayment of fees or security therefor" when the prisoner submits "an affidavit that includes a statement of all assets such prisoner possesses [and] that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1).  A prisoner proceeding IFP must nevertheless pay a filing fee or a portion thereof as funds become available.  Id. § 1915(b)(1).  Section 1915(e)(2) provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
> (A) the allegation of poverty is untrue; or
> (B) the action or appeal—
> (i) is frivolous or malicious,
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

---

process."  Id.  Therefore, based on Vanderberg, we conclude that Farese's argument regarding the constitutionality of § 1915(e)(2)(B)(ii) is without merit.

8

<u>Id</u>. § 1915(e)(2). Logically, § 1915(e) only applies to cases in which the plaintiff is proceeding IFP.

Here, the district court specifically found that Farese had not moved to proceed IFP in his RICO suit and had paid the filing and service-of-process fees in that action. The record also reflects that Farese did not proceed IFP in his RICO suit. Furthermore, the consolidation of Farese's cases did not alter the fees-paid status of his RICO case. See <u>Johnson v. Manhattan Ry. Co.</u>, 289 U.S. 479, 496–97 (1933); <u>cf. Xaros v. U.S. Fidelity and Guar. Co.</u>, 820 F.2d 1176, 1180 n.1 (11th Cir. 1987) ("Consolidation does not result in a merger of suits or parties such that federal jurisdiction in one case can be engrafted upon a case with which it is consolidated. Each suit must have an independent jurisdictional basis."). Thus, we conclude that the evidence does not support the district court's determination that Farese was proceeding IFP in his RICO suit. Therefore, because § 1915, which governs only IFP proceedings, does not apply to Farese's fees-paid RICO claim, the district court was not authorized to dismiss the RICO claim pursuant to § 1915.

Because Farese's RICO complaint was improperly reviewed and dismissed under an inapplicable statute, the district court erred in dismissing Farese's RICO claim. Accordingly, we vacate the district court's dismissal of Farese's RICO suit

and remand for further proceedings consistent with this opinion.[6]

## B.     *Dismissal of Farese's 42 U.S.C. §1985 Claims*

Farese also appeals the district court's dismissal of his § 1985(2) claim against the Defendants.[7] The district court found that Farese lacked standing to raise his § 1985 claims because it determined that the alleged acts of intimidation were taken against Farese's family members. In addition, the district court concluded that Farese's complaint failed to state a claim upon which relief may be granted.

We review de novo a district court's determination that a plaintiff lacks Article III standing to pursue a § 1985(2) claim. See Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n, 226 F.3d 1226, 1228 (11th Cir. 2000). To establish

---

[6] Because we vacate and remand the dismissal of Farese's RICO case, we do not reach the following arguments raised by Farese: (1) that defaults, which had been entered against several RICO defendants, should be reinstated and (2) that the district court abused its discretion by not taking judicial notice of various lawsuits, which allegedly supported Farese's RICO claim.

[7] Farese appeals the district court's dismissal of his § 1985(3) claim as well. Section 1985(3) provides a cause of action for a conspiracy to deprive "any person or class of persons of the equal protection of laws." 42 U.S.C. § 1985(3). This court has stated that § 1985(3) protects two types of classes: (1) "those kinds of classes offered special protection under the equal protection clause, and (2) classes that Congress was trying to protect when it enacted the Ku Klux Klan Act." Childree v. UAP/GA AG CHEM, Inc., 92 F.3d 1140, 1147 (11th Cir. 1996). Farese alleges that he states a claim against the Defendants under § 1985(3) because he is a member of the "prisoner class." Although we have never addressed whether prisoners are a protected class under § 1985(3), we conclude that the district court properly dismissed Farese's § 1985(3) claim because prisoners are neither a class offered special protection under the equal protection clause nor a class that Congress intended to protect when it enacted § 1985(3). See id. (stating that "we repeatedly have declined to extend [§ 1985(3)] to apply in non-racial contexts").

Article III standing, a plaintiff must demonstrate "(1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury is likely to be redressed by a favorable decision." Id.

Section 1985(2) prohibits conspiracies to intimidate parties or witnesses to federal lawsuits. Although we have not addressed standing as it relates to violations of § 1985(2), other circuits have determined that witnesses, as well as parties, have standing to bring § 1985(2) claims. See, e.g., Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1125 (10th Cir. 1994). Other circuits also have determined that a party has standing to bring § 1985(2) claims when the party seeks to argue that there was a conspiracy to intimidate his witnesses from testifying. See, e.g., Miller v. Glen & Helen Aircraft, Inc., 777 F.2d 496, 498 (9th Cir. 1985); Chahal v. Paine Webber Inc., 725 F.2d 20, 24 (2d Cir. 1984). Furthermore, the Supreme Court's treatment of § 1985(2)'s "injury in person or property" requirement, although not addressing the "injury in fact" prong of Article III standing, is instructive. See Haddle v. Garrison, 525 U.S. 121, 125–26 (1998). In Haddle, the Supreme Court explained that "[t]he gist of the wrong at which § 1985(2) is directed is not deprivation of property, but intimidation or retaliation against witnesses in federal-court proceedings." Id. at 125.

Farese's § 1985(2) claim is based on an alleged conspiracy among Dude and Dude's attorneys to force Farese to withdraw both his shareholder's lawsuit against

11

Dude and his adverse action in Dude's bankruptcy proceedings. Farese alleged that the Defendants threatened him by stating that they would fire Agostinelli if Farese did not withdraw his suits against Dude and that Dude ultimately did terminate Agostinelli. Farese also alleged that Dude engaged in a conspiracy with Scherer and Cohen to bring frivolous suits against Farese's family members. The Defendants and the district court correctly noted that these alleged threats were taken against Farese's family, not Farese. Farese, however, contends that the Defendants took these actions to intimidate him and cause him to withdraw his lawsuits against Dude.

Based on Farese's allegations, we conclude that Farese satisfies Article III's standing requirements. First, Farese has alleged an injury, intimidation. See Miccosukee Tribe of Indians of Fla., 226 F.3d 1228–29. Second, Farese has alleged that a causal connection exists between the intimidation and the alleged threatened and actual termination of Agostinelli and the filing of malicious and frivolous lawsuits against Farese's subpoenaed witnesses. See id. at 1228; see also Miller, 777 F.2d at 498 (holding that a party has standing to bring a § 1985 claim that his witnesses were intimidated). Finally, considering that Farese requested an injunction against future intimidation and monetary damages, Farese's intimidation injury likely would be redressed by a favorable decision. Therefore, Farese has standing to raise his § 1985 claim.

Although Farese has standing, we conclude that the district court correctly determined that he failed to state a claim upon which relief could be granted. We review de novo a district court's sua sponte dismissal for failure to state a claim, pursuant to § 1915(e)(2), using the same standards that govern Federal Rule of Civil Procedure 12(b)(6) dismissals. See Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).

Section 1985 provides a vehicle to redress conspiracies to interfere with civil rights. See Childree v. UAP/GA AG CHEM, Inc., 92 F.3d 1140, 1146–47 (11th Cir. 1996). Subsection (2) provides a cause of action to victims of conspiracies intended to injure or deter "any party or witness in any court . . . from attending such court, or from testifying to any matter pending therein." 42 U.S.C. § 1985(2).

Because Farese alleges a conspiracy among Dude and Dude's attorneys, his appeal raises an issue of first impression in our circuit: whether attorneys operating within the scope of their representation may be deemed conspirators in a § 1985 conspiracy.[8] Unless we conclude that attorneys acting within the scope of their

---

[8] Because Farese alleges a conspiracy between Dude and his attorneys, this appeal does not implicate the intracorporate-conspiracy doctrine. See McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1035 (11th Cir. 2000) (en banc) ("The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.").

13

representation may be deemed conspirators in a § 1985 conspiracy, Farese's § 1985 claim would fail to state a claim upon which relief may be granted, as he would not have alleged a conspiracy.

Few circuits have addressed the issue presented. The Third Circuit in Heffernan v. Hunter, 189 F.3d 405 (3d Cir. 1999), embarked on an exhaustive discussion of § 1985 conspiracies in the attorney-client context. In Heffernan, the plaintiff, an official with the Securities and Exchange Commission, filed suit pursuant to § 1985 against Hunter, an individual under investigation for insider trading, and Hunter's attorney, alleging that they conspired to file frivolous lawsuits and disseminate defamatory information to the media to intimidate and prevent him from testifying as a witness against Hunter in federal-court proceedings. See Heffernan, 189 F.3d at 408. The Heffernan court held that when an attorney's conduct falls within the scope of his representation of his client, a § 1985 conspiracy cannot exist. See id. at 413. The court stated that "[t]he right of a litigant to independent and zealous counsel is at the heart of our adversary system and, indeed, invokes constitutional concerns." Id.

Noting that disciplinary structures are currently in place to address any wrongful conduct by an attorney, the court stated that an attorney's conduct "within the scope of representation is regulated and enforced by disciplinary bodies

14

established by the courts." Id. In fact, "[a]buses in litigation are punishable by sanctions administered by the courts in which the litigation occurs." Id.; see also Chambers v. NASCO, Inc., 501 U.S. 32, 46–47 (1991) (finding that federal courts enjoy inherent powers to sanction attorney conduct and that "the inherent power extends to a full range of litigation abuses"). Moreover, the court noted that an offended third party may also proceed against the offending attorney under state law or report the conduct to state disciplinary bodies. See Heffernan, 189 F.3d at 413. The court concluded that this regulatory framework "provides third parties with protection that is lacking in the corporate field." Id.

The Heffernan court further stated that as long as an attorney's conduct falls within the scope of his representation, the attorney is immune from allegations of § 1985 conspiratorial conduct. See id. The court noted, however, that it is "axiomatic that if the challenged conduct occurs outside the scope of representation, no reason for immunity exists and the attorney and the client, as individuals, could form a conspiracy." Id. The court cautioned that the scope of the attorney-client relationship is broad and that even if the challenged activity violates the canons of ethics, "so long as it is within the scope of representation, it does not eliminate the exemption from

15

a conspiracy charge under section 1985."[9] Id. Therefore, the Third Circuit explained that in order to plead a § 1985 conspiracy involving a client and his attorneys, one must prove that the attorneys were operating outside the scope of their representation. See id.; see also Travis v. Gary Comty. Mental Health Center, Inc., 921 F.2d 108, 111 (7th Cir. 1990) (holding that no conspiracy existed between corporate executives and outside counsel in violation of § 1985(2) and stating that "[t]reating involvement of a lawyer as the key unlocking § 1985 would discourage corporations from obtaining legal advice before acting, hardly a sound step to take"); Doherty v. Am. Motors Copr., 728 F.2d 334, 339–40 (6th Cir. 1984) (concluding that the plaintiff did not present any evidence proving the existence of a conspiracy between the defendant and the defendant's attorneys because the attorneys "were motivated not by personal concerns but by concerns for their clients").

We agree with the well-reasoned opinion of the Third Circuit and hold that as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy.[10] Although

---

[9] Even so, such unethical conduct could obviously be addressed by either the court in which the offending attorney appears or the appropriate state disciplinary bodies.

[10] In so holding, we acknowledge our line of cases applying a criminal-conspiracy exception to the intracorporate-conspiracy doctrine. See McAndrew, 206 F.3d at 1038. This exception states that the intracorporate-conspiracy doctrine does not apply to alleged intracorporate criminal conspiracies. See id. We, however, agree with the Third Circuit's conclusion that although the intracorporate-conspiracy doctrine is similar to and at first glance appears to provide "a convenient

16

Farese alleged that Dude and his attorneys engaged in conspiratorial conduct in violation of § 1985, the attorneys did not engage in any conduct outside the scope of their representation. Furthermore, the actions and advocacy of the attorneys appear to have been for the sole benefit of their client rather than for their own personal benefit.[11]

Because we cannot say that the actions of Dude's attorneys were beyond the scope of the attorney-client relationship so as to make them susceptible to characterization as a conspiracy under § 1985, we affirm the district court's dismissal of Farese's § 1985 claims against them. Furthermore, because § 1985 requires conduct by more than one actor, the allegations of misconduct by Dude alone may not support Farese's § 1985 claims. Therefore, we affirm the dismissal of Farese's §

---

analogy for the attorney-client situation, there are important differences between the agency relationships involved in private corporate activities and those arising in the practice of law." Heffernan, 189 F.3d at 413. Our holding today leaves untouched our cases dealing with the pure intracorporate-conspiracy doctrine and criminal-conspiracy exception applicable to corporate agents.

[11] If Farese believes that Cohen and Scherer have engaged in wrongful conduct that does not arise to the level of a viable claim under § 1985(2), this suit is not the appropriate vehicle in which to air those grievances. The appropriate forum would be the court where the wrongful conduct occurred. We have long held that powers incidental to the federal court include the authority to "control and discipline attorneys appearing before it." In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995). If the attorneys engaged in wrongful conduct during Farese's shareholder lawsuit against Dude, Farese could have brought this to the attention of the court hearing the shareholder lawsuit. In turn, the bankruptcy court would have been the appropriate forum for Farese to allege any wrongful conduct of Dude's attorneys during that proceeding.

1985 claims against Dude.[12]

## C.    *Federal Rule of Appellate Procedure 38 Motion*

Appellees Cohen and the law firm of Furr & Cohen, P.A. argue that this court should grant them attorney's fees under Federal Rule of Appellate Procedure 38. Rule 38 states that, upon a determination that an appeal is frivolous, an appellate court may, "after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38. "Rule 38 sanctions have been imposed against appellants who raise 'clearly frivolous claims' in the face of established law and clear facts." Misabec Mercantile, Inc. De Panama v. Donaldson, Lufkin & Jenrette ACLI Futures, Inc., 853 F.2d 834, 841 (11th Cir. 1988). Because Farese has raised valid arguments as to why the district court's dismissal should be reversed or vacated, we conclude that the Rule 38 motion is without merit and deny the motion.

## III.    CONCLUSION

For the reasons stated, we (1) VACATE the district court's dismissal of

---

[12] Because § 1986 claims are derivative of § 1985 claims, see Park v. City of Atlanta, 120 F.3d 1157, 1159–60 (11th Cir. 1997) (per curiam), we also affirm the district court's dismissal of Farese's § 1986 claim.

Farese's RICO suit and REMAND for further proceedings consistent with this opinion; (2) AFFIRM the dismissal of Farese's § 1985 claims for failure to state a claim upon which relief may be granted; and (3) deny Cohen and Furr & Cohen, P.A.'s Rule 38 motion.[13]

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

[13] We also affirm the district court's dismissal of Farese's First, Fifth, and Fourteenth Amendment claims. The First, Fifth, and Fourteenth Amendments "do not apply to private parties unless those parties are engaged in an activity deemed to be 'state action.'" NBC, Inc. v. Communications Workers of Am., 860 F.2d 1022, 1024 (11th Cir. 1988). Because Farese has not alleged state action, the district court properly dismissed his constitutional claims.

Additionally, we vacate and remand for further proceedings Farese's state-law claims because the district court did not make any findings of fact or conclusions of law regarding these claims. See Bruschi v. Brown, 876 F.2d 1526, 1532 (11th Cir. 1989) (vacating the portion of a district court's order relating to state-law claims where the district court made no findings of fact or conclusions of law).