[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13773
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-02700-MHC

JAMES P. BROWN,

Plaintiff-Appellant,

versus

MOREHOUSE COLLEGE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 23, 2020)

Before WILSON, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Plaintiff James Brown brought this action against defendant Morehouse College under 31 U.S.C. § 3730, alleging wrongful retaliation under the federal False Claims Act. The district court granted summary judgment to Morehouse College. Brown appeals that decision, and Morehouse College asks for sanctions against Brown for a frivolous appeal. We affirm the district court's holding as to Brown's retaliation claims, and we deny Morehouse College's motion for sanctions.

## I.

James Brown was employed by Morehouse College for about eleven and a half years, between November 1996 and June 2015. Beginning in November 2004, Brown was employed as the Director in the Office of Research Careers, a position that was completely funded by grants. He was also the Principal Investigator for the National Science Foundation's Renaissance Scholarship program, which meant that he "was responsible for ensuring compliance with the reporting obligations established by the NSF."

Six years into the last role he held with the College, Brown submitted an internal complaint with the College's EthicsPoint hotline. The complaint concerned the FACES grant, which according to Brown was a National Science Foundation sub-contract with Georgia Tech. In his complaint, Brown reported what he saw as errors with the College's handling of the FACES grant. In particular, he stated that the College failed to comply with its cost-sharing obligations, and that the College was wrongfully expensing the grant for more

people than were on budget.  A report of a subsequent meeting between Chief Ethics and Compliance Officer Doris Coleman and Brown revealed that, according to Brown, "all of the errors have to do with billing issues.  His major concern is that expenditures do not conform to the grant provisions."  Seven months later, the College sent Brown a letter to formally respond to the complaint.  In the letter, the College declined to remove one of the contested persons from the grant and stated that it considered "this report closed."

Two years later, Brown sent a memorandum to Dr. Garikai Campbell, the College's provost.  In it, Brown raised three concerns.  *First*, he said that the College should have been recovering more funds from Georgia Tech under the FACES grant.  *Second*, he said that the College had excessively charged another grant for fringe benefits.  And *third*, he claimed that the budget analysts refused to provide feedback on their rejections of spending requests.

It was around the time of that letter to Campbell that Brown's troubles started.  They began with a lapse in salary disbursement that lasted from September 2013 until sometime in early 2014.  And they concluded on June 1, 2015, when Brown was provided with a notice of contract non-renewal—which is another way of saying that his employment with the College was ended.  Brown found a lawyer, who sent a letter to a member of the College's Board of Trustees that stated that Brown made his lawyer "aware of the whistleblower statutes with regard to grant funding from NASA and NSF."

If that letter was meant as a threat, Brown made good on it.  He filed suit against the College, claiming that the College's actions were in retaliation for

protected conduct under the federal False Claims Act, 31 U.S.C. § 3730(h).  In his complaint, he claimed that the College "acted by and through its agent's servants and employees to intentionally discriminate and punish" Brown "for reporting prior misuse of Federal funds spending."  Following a deposition of Brown and other discovery actions, the College moved for summary judgment.  In its brief in support of its motion, the College claimed that Brown was terminated for "repeated failure to follow the scholarship selection criteria for the Renaissance Scholarship," as well as because "funding for the Renaissance Scholarship expired, thereby eliminating funds necessary to support Dr. Brown's role."

The district court granted the College's motion.  Noting that "Brown's EthicsPoint complaint alerted Morehouse that, at most, it was misusing and abusing federal funds" and that Brown's 2013 memo did not suggest "that Morehouse was somehow defrauding the United States," the district court found that Brown did not engage in protected activity.  More specifically, the district court found that "the evidence in the record does not show that Brown's EthicsPoint complaint or letter to Campbell made Morehouse aware of the possibility of an FCA action."

Brown now appeals to this Court.  Displeased by that move, the College filed a motion under Federal Rule of Appellate Procedure 38, seeking damages for a frivolous appeal.

## II.

"We review a district court's grant of summary judgment *de novo*.  Summary judgment is appropriate only when no genuine issue of material fact

exists and the moving party is entitled to judgment as a matter of law." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1177 (11th Cir. 2020) (quotation marks and citation omitted).

## III.

### A.

The federal False Claims Act (FCA) provides a cause of action for an employee "discriminated against in the terms and conditions of employment because of lawful acts done" by the employee "in furtherance of an action under" the FCA "or other efforts to stop 1 or more violations of" the FCA. 31 U.S.C. § 3730(h). More simply, an employer may not retaliate against an employee for protected activity under the FCA. And, according to the parties, protected activity under the FCA includes those employee actions by which FCA litigation was "a distinct possibility."[1] *Childree v. UAP/GA AG Chem., Inc.*, 92 F.3d 1140, 1146 (11th Cir. 1996).

Brown would like us to find that the lapse in his salary and the termination of his employment were retaliatory actions by the College. He argues that his salary woes were the result of retaliation. He proffers his apparently sterling evaluations to show that the College *couldn't* have terminated his employment for

---

[1] The College uses the "distinct possibility" test for whether an employee's activity is protected. In 2009 and 2010, the anti-retaliation section of the FCA was amended to arguably encompass a different standard for protected activity. *See, e.g.*, *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 201 (4th Cir. 2018). This Circuit has not yet addressed if or how the amended language has changed what counts as protected activity. Because both Brown and the College accept the application of the "distinct possibility" test, we assume for the purposes of this case that it applies.

performance issues.  And he argues vigorously that the lack of grant funding for his position was not the true reason for his termination.

The problem for Brown is that his arguments try to run before they walk. Perhaps the College was retaliating against him, perhaps it was not.  Either way, the FCA only prohibits retaliation against protected activity, and nothing Brown raises on appeal suggests that his activity was protected.  More bluntly, the sorts of activities that on appeal he accuses the College of committing do not support any reason to think the College was violating the FCA.

Brown consistently describes his reports as raising "mismanagement of funds," abridging "operational guidelines," "financial irregularities," "misuse of funds," and "abuse of funds."  But it is well-established that mere misuse or bad practice is not enough to ground an FCA claim.  Rather, FCA liability "arises from the submission of a fraudulent claim to the government, not the disregard of government regulations or failure to maintain proper internal policies."  *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1045 (11th Cir. 2015) (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005)).  And nothing Brown raises on appeal even gestures at a possibility that the College was submitting *anything* to the government.  And if there is no possibility raised of the College submitting anything to the government, neither can there be any possibility of an FCA violation.[2]

---

[2] This may well be a different case if Brown argued that the College was being wrongfully *reimbursed*, and that such reimbursement was fraud upon the government.  But because he does not mention this aspect with any specificity, we decline to consider it.

Brown's production of his lawyer's 2016 letter threatening FCA litigation is similarly unhelpful to his case. Even if the letter raised the "distinct possibility" of FCA litigation, the distinct possibility standard requires that such possibility be in existence "at the time the" protected activity occurred. *Childree*, 92 F.3d at 1146. This letter, of course, came *after* anything Brown did as an employee of the College. It cannot reach back in time to make his activity protected under the FCA.

If Brown did not engage in protected conduct, then it does not matter if the College retaliated or not. Brown's arguments on appeal do not persuade us that his conduct raised any possibility of FCA litigation. Thus, Brown's appeal fails on the merits.

B.

The College seeks sanctions under Rule 38 of the Federal Rules of Appellate Procedure. Under Rule 38, if we determine "that an appeal is frivolous," we may, "after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. Proc. 38. "Rule 38 sanctions are appropriately imposed against appellants who raise 'clearly frivolous claims in the face of established law and clear facts.'" *Parker v. Am. Traffic Sols., Inc.*, 835 F.3d 1363, 1371 (11th Cir. 2016) (quoting *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003)). And in this Circuit, "a claim is clearly frivolous if it is 'utterly devoid of merit.'" *Id.* (quoting *Bonfiglio v. Nugent*, 986 F.2d 1391, 1393 (11th Cir. 1993)). As these rules show, a losing

appeal is not synonymous with a frivolous one.  Brown's claim is the former, but not the latter.  We decline to issue sanctions.

IV.

Not every claim that an employer is committing a violation of law falls under the federal False Claims Act.  The FCA is not a panacea, and for Brown's alleged injuries, it provides no cure.  The district court's judgment is **AFFIRMED**.