[PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 20-11699

————————————————

TRACEY M. CHANCE,

Plaintiff-Appellant,

*versus*

ARIEL COOK,
HEATHER ENCINOSA,
MARGARET ZABIJAKA,
CONSTANGY BROOKS SMITH & PROPHETE LLP,
NABORS GIBLIN & NICKERSON PA,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:19-cv-00335-MW-CAS

————————————

Before LAGOA, BRASHER, and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Tracey Chance appeals the dismissal of her complaint against several attorneys under 42 U.S.C. § 1985(2) for obstruction of justice. Because Chance has not sufficiently alleged that the defendants in this case acted outside the scope of their representation, we affirm.

## I.

Beginning in 2004, Chance, a female employee of Wakulla County ("the County"), worked for the County's building department.[1] She maintained that her supervisor within the building department prevented her from being promoted because she had a preexisting hip injury. She also explained that this supervisor made inappropriate comments to her and harassed her both personally and indirectly when he directed other employees with-

---

[1] These background facts are drawn from the complaint in Chance's first case against the County for sexual harassment ("the sexual harassment case"). *See* Case No. 4:18-cv-00586-MW-CAS (N.D. Fla. 2018). The defense attorneys' conduct in the sexual harassment case is the basis for Chance's conspiracy claims under 42 U.S.C. § 1985(2) in this case.

in the department to do the same.  Ultimately, she was suspended and faced a demotion from her position within the building department, and she was later transferred to another job within the County.  As a result of the way she was treated within the building department, Chance filed a lawsuit in federal district court for, among other claims, the County's violation of Title VII of the Civil Rights Act of 1964 and for the County's violation of Title VII of the Florida Civil Rights Act.  Attorneys Ariel Cook and Margaret Zabijaka represented the County in this sexual harassment case, and attorney Heather Encinosa consulted on the case.[2] Cook and Zabijaka work for Constangy, Brooks, Smith & Prophete, LLP, which represented Wakulla County in the lawsuit.  Encinosa works for Nabors, Giblin, and Nickerson, P.A.

After filing suit, and while still working for the County, Chance was frightened by the retaliation she was facing from those who worked within the building department.  So, Chance recorded numerous conversations between herself and others and "made no secret" about it.  The Wakulla County building in which she worked was already subject to audio and video recording, and her building supervisor frequently stated that County employees could record anyone without consent.

During discovery, the attorneys for the County requested these recordings.  Chance produced the recordings.  One of the

---

[2] These facts and the ones to follow are alleged in the amended complaint in the present case.

County's defense attorneys, Zabijaka, wrote to Chance's attorney that some of the recordings violated Florida's privacy law, Fla. Stat. § 934.03.[3]  Zabijaka also asked Chance's attorney whether he planned to introduce the recordings at trial and explained that the defense would move to strike them if the recordings were introduced.  Chance's attorney responded that the criminal accusation was "irresponsible," and that in his opinion, "judicial applications of section 934.03 in the workplace were vanishingly small."

The defense attorneys for the County then went to the "law enforcement authorities with jurisdiction over Wakulla County . . . seeking the arrest and prosecution of . . . Chance for making the workplace recordings."[4]  A detective for the Wakulla County Sheriff's Office then obtained a search warrant for Chance's home from a state circuit judge.[5]  The officers executing

---

[3] Florida law generally bans the intentional interception of any "wire, oral, or electronic communication."  Fla. Stat. § 934.03(1) (2012).

[4] Chance labels the defense attorneys' reporting of the information about her recordings as a "criminal complaint," but it is unclear how formal the reporting was and to which law enforcement entity the Wakulla attorneys reported this information.

[5] In her complaint, Chance does not take issue with this judge's probable cause analysis for the search warrant or the issuance of the search warrant itself.  *See, e.g.*, *United States v. Lopez*, 649 F.3d 1222, 1246 (11th Cir. 2011) (explaining that "the information supporting the government's application for a warrant must show that probable cause exists at the time the warrant issues" (quoting *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000))).  The complaint alleges that there "was never a finding of probable

the warrant then searched her residence "for the recordings and any devices related to the recordings." The Assistant State Attorney with jurisdiction over the case then determined that Chance did not violate Florida law and informed Chance's attorney that he would not seek prosecution.

Chance alleged that the execution of the search warrant and the defense attorneys' behavior terrified her and were aimed to intimidate her to not testify in her sexual harassment case. The sexual harassment case settled a few months after this incident, and Chance alleged that the search warrant's execution motivated her in part to settle.

All these facts bring us to the crux of the present case. In this case, Chance filed a five-count complaint against the defense attorneys for the County and their respective law firms. Counts One through Three alleged that the individual defense attorneys engaged in a conspiracy to deter Chance from testifying in the sexual harassment case against the County under § 1985(2). Counts Four and Five alleged that the defense attorneys' law firms neglected to prevent the conspiracy under 42 U.S.C. § 1986. The defense attorneys and their law firms filed several motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). The Dis-

cause for *Defendants' criminal complaint* against Plaintiff." But, for a § 1985(2) claim, we aren't looking at whether a defense attorney had probable cause to tell officers that a crime had been committed, but rather whether a defense attorney was acting within the scope of representation when reporting that conduct to the officer, as explained *infra* Part III.A.

trict Court dismissed the complaint, explaining that Chance's alleged facts did not demonstrate that the defense attorneys for the County had engaged in a conspiracy that met the elements of 42 U.S.C. § 1985(2).  Chance then filed an amended complaint that contained more factual allegations.  The defense attorneys and law firms then filed another set of motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The District Court again dismissed Chance's complaint, holding that Chance had failed to allege facts to suggest that the defense attorneys acted outside the scope of their representation when they reported the recordings to local law enforcement.  The Court dismissed the claims with prejudice, and Chance timely appealed.

## II.

We review a district court's grant of a motion to dismiss for failure to state a claim *de novo*, "accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Fox v. Gaines*, 4 F.4th 1293, 1295 (11th Cir. 2021).  "[A] complaint must [] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).

## III.

*A.*

We start with the language of the statute. Section 1985(2) makes it unlawful for "two or more persons" to "conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein." 42 U.S.C. § 1985(2). Specifically, a § 1985(2) deterrence claim like Chance's requires that the plaintiff prove (1) a conspiracy; (2) to deter a witness by force, intimidation, or threat from attending or testifying before a United States court; and (3) injury to the plaintiff. *See Morast v. Lance*, 807 F.2d 926, 930 (11th Cir. 1987). And when the defendant in a § 1985(2) case is an attorney, we've held that "as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy." *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003). In other words, unless a plaintiff alleges facts to establish that the attorney was acting outside the scope of the representation when he or she committed the alleged violation(s) of § 1985(2), a plaintiff cannot maintain a cause of action under § 1985(2) against the attorney.

We created this rule regarding attorneys because civil litigation is adversarial by nature. Expanding § 1985(2) to include the conduct of attorneys acting within the scope of their representation would most certainly have a chilling effect upon the zealous advocacy we expect out of lawyers. *Cf. Harrell v. Florida Bar*, 608 F.3d 1241, 1254–55 (11th Cir. 2010) (examining a lawyer's

First Amendment claim that a Florida bar rule chilled his speech). At the same time, to define the parameters of § 1985(2) to exclude the conduct of attorneys acting within the scope of their representation does not mean that the attorneys' conduct cannot be addressed by another vehicle. "The appropriate forum [in such cases] would be the court where the wrongful conduct occurred. We have long held that powers incidental to the federal court include the authority to 'control and discipline attorneys appearing before it.'" *Farese*, 342 F.3d at 1232 n.11 (quoting *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995)). In short, we do not give a free pass to attorneys who engage in less-than-ethical conduct on behalf of their clients. We simply require plaintiffs to bring that conduct to the attention of the court under whose jurisdiction the underlying case is being litigated rather than bringing a subsequent § 1985(2) claim.

*B.*

Turning to the present case, Chance alleges that when the County's defense attorneys reported the recordings to local law enforcement as potentially violative of Fla. Stat. § 934.03, the defense attorneys were not acting within the scope of their representation and that such a reporting constituted using force, threat, or intimidation to deter Chance from continuing her lawsuit for sexual harassment against the County. We do not address whether force, threat, or intimidation was used here because Chance has not adequately alleged that the County defense attor-

neys were acting outside the scope of their representation. And, under *Farese*, that ends the matter.

Per *Farese*, it is Chance's burden to allege facts that establish that the County defense attorneys were acting outside the scope of their representation when they told law enforcement about Chance's recordings. *See id.* at 1231–32. We could not say on the facts of *Farese* that threats by defense attorneys and their clients to fire a plaintiff's family members and accompanying frivolous lawsuits against the plaintiff's family members "were beyond the scope of the attorney-client relationship so as to make them susceptible to characterization as a conspiracy under § 1985." *Id.* at 1232. So, what's really before us is an *a fortiori* question. If we held that it was within the scope of representation for a defense attorney to make threats and file frivolous lawsuits on behalf of his client, then is it also within the scope of representation for a group of defense attorneys to report discovery material that they believe might be a violation of state law? We say yes.

In her complaint, Chance explains that "[u]nder no possible scenario was the conduct of [the defense attorneys] in conspiring to make or in making a criminal complaint against Plaintiff within the scope of their representation in the sexual harassment case." But she never alleges any facts to plausibly suggest that, by making a criminal complaint, the defense attorneys acted outside the scope of their representation. Indeed, her complaint suggests that the defense attorneys filed the complaint for the "sole benefit of their client rather than for their own personal benefit." *Id.* at

1232.   In other words, this is argument without substantiating plausible allegations. *See Am. Dental Ass'n*, 605 F.3d at 1290 (explaining that the court must eliminate "merely legal conclusions" not supported by well-pled factual allegations in a Rule 12(b)(6) analysis).  Chance alternatively points to the fact that the County defense attorneys had been aware of Chance's recordings for many months and only reported her recordings to law enforcement when they learned that Chance "insist[ed] on her right to testify in federal court about the recordings and present them as evidence" in the sexual harassment case.  This allegation misses the mark too.  This allegation goes to whether the defense attorneys were trying to intimidate Chance but in no way suggests that the defense attorneys were acting outside the scope of their representation.  Because Chance cannot clear the *Farese* bar, her § 1985(2) claims were properly dismissed.[6]

    **AFFIRMED.**

---

[6] Chance did not appeal the dismissal of her claims under 42 U.S.C. § 1986, so we do not address them here. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).  And, in any event, they fall with the § 1985(2) claims. *See Farese*, 342 F.3d at 1232 n.12 ("Because § 1986 claims are derivative of § 1985 claims . . . we also affirm the district court's dismissal of [the] § 1986 claim.").

20-11699                    Brasher, J., Concurring                    1

BRASHER, Circuit Judge, concurring in the judgment:

I write separately because I am not persuaded that the allegations in Chance's complaint support the conclusion that the County's attorneys were acting within the scope of their representation when they reported Chance to the sheriff's office. Because we are evaluating a complaint at the motion to dismiss stage, we must give Chance all reasonable inferences in her favor. And I believe one reasonable inference at this stage of the litigation is that the County's lawyers in the underlying employment discrimination lawsuit were not acting on behalf of their client when they reported Chance's alleged crime to the sheriff's office. Unlike writing letters and threatening countersuits, employment discrimination lawyers do not usually file police reports on their client's behalf.

But I concur in the judgment because I believe Chance's complaint fails to state a claim for other reasons. Specifically, she does not plausibly allege that the County's defense attorneys used "force, intimidation, or [a] threat" to deter her from pursuing her sexual harassment case when they notified the sheriff's office of her audio recordings. Especially when it is supported by a reasonable basis in law and fact, notifying law enforcement of possible criminal activity does not violate Section 1985(2). *See Timmerman v. U.S. Bank, N.A.,* 483 F.3d 1106, 1124 (10th Cir. 2007) (concluding that civil claims with "a reasonable basis in law and fact" do not constitute "force or intimidation"). As a matter of plain language, reporting an alleged crime to the police is not "force."

2                    Brasher, J., Concurring                    20-11699

Notifying law enforcement of a possible criminal activity does not exert "[p]ower, violence, or pressure" against a person. *Force*, *Black's Law Dictionary* (11th ed. 2019). Although law enforcement may eventually exert power over someone in response to a police report, the report itself does not. Likewise, reporting a possible crime is not "intimidation." *Intimidation*, *Black's Law Dictionary* (11th ed. 2019) (defining intimidation as "[u]nlawful coercion; extortion"). And it is not a "threat." *Threat*, *Black's Law Dictionary* (11th ed. 2019) ("A communicated intent to inflict harm or loss on another or on another's property . . . .").

This commonsense conclusion also accords with the historical context in which Congress enacted Section 2 of the Ku Klux Klan Act of 1871, from which Section 1985(2) derives. Congress passed this provision to "respon[d] to a rising tide of Klan terrorism against blacks and Union sympathizers and . . . to proscribe conspiracies 'having the object or effect of frustrating the constitutional operations of government through assaults on the person, property, and liberties of individuals.'" *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1041 (11th Cir. 2000) (quoting Comment, *A Construction of Section 1985(c) in Light of its Original Purpose*, 46 U. Chi. L. Rev. 402, 402-03 (1979)). If informing law enforcement of possible criminal activity violated the statute, then a statute enacted to target efforts to obstruct justice would itself be a tool for the obstruction of justice.

Finally, I am confident the County's defense attorneys had a reasonable basis in law and fact for making their report. Florida

20-11699                Brasher, J., Concurring                3

has a two-party consent law, which generally bans the intentional recording of private conversations without all parties' consent. Fla Stat. § 934.03(1) (2012). So, the County's attorneys had reason to believe that Chance violated Florida law when they obtained Chance's recordings of her conversations with coworkers. Moreover, Chance's complaint alleges that, based on the report, investigators obtained a search warrant supported by probable cause, and there is no allegation that they lied to or otherwise misled the judge to obtain the warrant.

Because Chance's complaint fails to plausibly allege that the County's attorneys used "force, intimidation, or [a] threat," it fails to state a claim for relief under Section 1985(2). Accordingly, her Section 1985(2) claims were properly dismissed.