[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 31, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10736
Non-Argument Calendar
_____

D. C. Docket No. 05-22481-CV-FAM

HUNTLEY H. THOMPSON,

Plaintiff-Appellant,

versus

BILL MCCOLLUM,
Attorney General,
KATHERINE FERNANDEZ RUNDEL,
Miami-Dade County State Attorney,
TOBY L. WILSON,
MICHAEL HASS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 31, 2007)

Before DUBINA, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Appellant Huntley H. Thompson ("Thompson"), a Florida prisoner proceeding *pro se*, appeals the district court's *sua sponte* dismissal of his 42 U.S.C. § 1983 civil rights complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim. On appeal, Thompson argues that the district court erred in dismissing his § 1983 complaint seeking access to DNA evidence because he did not seek to invalidate his state conviction.[1] Thompson further argues that the DNA samples he sought could be exculpatory evidence. Thompson claims that the district court erred in failing to consider whether the state of Florida had failed to disclose favorable DNA evidence at his trial. Thompson finally claims that the district court erred by relying on *Grayson v. King*, 460 F.3d 1328 (11th Cir. 2006), *cert. den.*, 127 S. Ct. 1005 (2007), because Thompson previously had asserted his actual innocence, unlike the plaintiff in *Grayson*.

We review *de novo* a district court's *sua sponte* dismissal for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003). A district court must dismiss an *in forma pauperis*

_____

[1]Thompson was convicted in Florida state court and sentenced to life imprisonment for burglary with assault, kidnaping with a firearm, armed robbery, sexual battery, and aggravated battery.

2

proceeding at any time if it determines that the action is frivolous or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). Civil rights actions pursuant to § 1983 require a plaintiff to show that a defendant deprived him of a federally protected right or privilege while acting under color of state law. 42 U.S.C. § 1983. The standard for determining whether a complaint states a claim upon which relief may be granted is the same whether under § 1915(e)(2)(B) or Fed.R.Civ.P. 12(b)(6) or (c), and a reviewing court must view all facts in the complaint as true. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). We have held that "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the prisoner can prove no set of facts in support of his claim which would entitle him to relief." *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984) (per curiam). "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Issues not raised on appeal are abandoned. *Mathews v. Crosby*, 480 F.3d 1265, 1268 n.3 (11th Cir. 2007), *pet. for cert. filed*, 76 U.S.L.W. 3050 (U.S. July 23, 2007) (No. 07-86).

In Florida, whoever aids or abets a felony against the state is a principal in the first degree and may be charged and punished as such, regardless of whether he

3

is actually or constructively present at the commission of the offense. Fla. Stat. § 777.011 (1997).

Although a prisoner's § 1983 claim that effectively challenges his conviction is barred, a § 1983 action is not barred where the action, "even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff." *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364, 2372 (1994). As such, we have held that a prisoner is permitted to request DNA evidence that has been used at his trial under § 1983 because obtaining such evidence does not "necessarily demonstrate[ ] or even impl[y] that his conviction is invalid." *Bradley v. Pryor*, 305 F.3d 1287, 1290 (11th Cir. 2002).

In *Grayson*, a case with facts very similar to the instant case, we held that the plaintiff had no constitutional right to DNA evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), and *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893 (1976). *Grayson*, 460 F.3d at 1339-1340, 1341-1342. Grayson had confessed to, and was convicted of, capital murder during a burglary. *Id.* at 1332, 1334. During the burglary, Grayson had repeatedly raped the homeowner. *Id.* at 1332. Twenty years after his conviction, and after direct and collateral attacks on his sentence, Grayson filed a § 1983 action seeking access to biological evidence used at his trial. *Id.* at 1334-1335. Grayson alleged that the defendants violated

4

his Fourteenth Amendment due process rights by refusing to turn over the evidence, and that such a refusal deprived him of the chance to show his actual innocence. *Id.* at 1335. Grayson, however, had never specifically alleged actual innocence. *Id.*

We held that a plaintiff suing for biological evidence under § 1983 must show that the denial of post-conviction access to the biological evidence deprived him of a federally protected right. *Id.* at 1336. We did not conclude that there could never be a post-conviction right of access to DNA evidence, but stated that if such a right existed, it would be under "extraordinary circumstances." *Id.* at 1339, 1342. We observed that "[t]he time for fair trial arguments [had] long since passed" because the plaintiff had exhausted direct and collateral attacks on his sentence, and there was no authority for the proposition that *Brady* extended beyond trial to post-conviction matters. *Id.* at 1337-1338. We concluded that Grayson could not state a valid claim under *Brady* because (1) the evidence he sought was available at trial, (2) he received a fair trial, (3) the application of *Brady* was inappropriate because Grayson was not trying to ensure a fair trial, and (4) he could not show a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed to him at trial. *Id.* at 1339-1340.

5

Additionally, we held that Grayson could not show that he had a procedural due process right to DNA evidence under *Mathews*. *Id.* at 1341-1342. We assumed that Grayson had a residual, continuing liberty interest in avoiding application of the death penalty, but concluded that several other interests outweighed his private liberty interest. *Id.* at 1341. Specifically, we determined that Grayson could not show that he was entitled to DNA evidence under *Mathews* because (1) the risk of an erroneous deprivation of his potential liberty interest was low and the probable value of his post-conviction access to the DNA was slight; and (2) "the government ha[d] a strong interest in the finality of a duly adjudicated criminal judgment[]." *Id.* at 1341-1342.

Here, Thompson claims that he was deprived of his Fourteenth Amendment due process rights by the denial of access to DNA evidence, and he cites to *Brady* in making this argument. Therefore, liberally construing his complaint, Thompson, like the plaintiff in *Grayson*, makes these claims pursuant to both *Brady* and *Mathews*.

With respect to the *Brady* component of Thompson's claim, we conclude from the record that the district court did not err in dismissing Thompson's complaint because he can not show "extraordinary circumstances" giving him a right to post-conviction DNA evidence. Specifically, although Thompson, unlike

6

the plaintiff in *Grayson*, continues to allege his actual innocence, he can not show that he has a right to post-conviction DNA evidence under *Brady* for several reasons. First, Thompson concedes that the evidence he sought was available at trial by alleging that the evidence had been collected and tested before trial, and that an expert testified about the evidence at his trial. Second, despite Thompson's arguments to the contrary, there is no evidence in the record that he did not receive a fair trial. Third, as pointed out in both the state court order denying his Fla.R.Crim.P. 3.853 motion for DNA evidence and the second magistrate's report, the availability of further DNA testing would not show a reasonable probability that the result in Thompson's criminal trial would have been different if the DNA evidence had been disclosed to him at trial. Specifically, the evidence showed that Thompson was present during the crimes, and testing already had shown that Thompson's DNA was not present in the victim. The absence of Thompson's DNA does not, however, show that he is actually innocent because (1) he was identified by both victims as present during the crime, and under Florida law, could have been charged as a principal, *see* Fla. Stat. § 777.011 (1997); or (2) he may have assisted in some manner that did not leave DNA evidence.

Further, with respect to the procedural due process component of his claim, Thompson failed to state a claim under *Mathews* because the risk of an erroneous

7

deprivation of his potential liberty interest was low. First, Thompson already had received a fair trial and had exhausted appellate and collateral attacks on his conviction and sentence. Thus, he had an extensive opportunity to preserve his liberty interest in being free from state custody. Moreover, Thompson filed in state court a Rule 3.853 motion seeking access to DNA evidence, such that he was not entitled to further process in the form of having the district court compel Florida to provide further testing. Second, the value of additional DNA testing is low because, as noted above, Thompson could have committed the crime without having left any DNA evidence and could also have been found guilty as a principal based on the fact that he aided and abetted the offense. Finally, the state of Florida has a strong interest in the finality of Thompson's conviction and sentence.

Thompson filed a motion for reconsideration which the district court denied. In his notice of appeal, Thompson does not mention that he is appealing the district court's order denying his motion for reconsideration. Therefore, Thompson abandons any argument relating to this motion for reconsideration. *See Matthews*, 480 F.3d at 1268 n. 3. Accordingly, we affirm the district court's judgment of dismissal.

**AFFIRMED.**