[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 20, 2010
JOHN LEY
CLERK

No. 10-10029
Non-Argument Calendar
_____

D. C. Docket No. 1:09-cv-23315-CMA

HUNTLEY H. THOMPSON,

Plaintiff-Appellant,

versus

KATHERINE FERNANDEZ RUNDLE,
of Miami-Dade State Attorney's Office,
DONALD J DIECIDUE,
of North Miami Police Department,
TOBY L WOLSON,
of Metro Dade Police Department Crime Laboratory Bureau,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 20, 2010)

Before CARNES, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Huntley H. Thompson, a Florida prisoner proceeding *pro se*, appeals the district court's dismissal of his 42 U.S.C. § 1983 complaint against three Florida officials for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii).  We affirm the district court's judgment.

## I.  Background

On July 28, 1992, a man and a woman reported an armed home invasion by three young men.  The woman told officers responding to the call that she had been repeatedly raped and gave them physical descriptions of the assailants.  Detective Donald Diecidue of the North Miami Police Department then transported her to a Rape Treatment Center, where the medical examiner recovered 29 items of biological evidence from her, including semen, spermatozoa, and pubic hair samples.  On September 23, 1992, the two victims of the home invasion identified Huntley H. Thompson from a picture lineup at the police station. Thompson was arrested and voluntarily provided blood, saliva, and pubic hair samples to the police for comparison.  A doctor concluded that three of the samples recovered from the female rape victim did not match Thompson's DNA profile.  At a pretrial hearing, the prosecutor incorrectly informed Thompson that Diecidue had gathered

2

only 14 items of biological evidence from the female rape victim during the investigation.

At trial, the female rape victim testified that Thompson was one of the first to enter the house but gave conflicting testimony about whether she was raped by two or three of the assailants. Thompson was convicted of burglary with assault, kidnapping with a firearm, armed robbery, sexual battery, and aggravated battery, and was sentenced to life imprisonment.

On October 30, 2009, Thompson filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the following defendants had violated his constitutional rights: (1) Katherine Rundle, the State Attorney for Miami-Dade County, Florida; (2) Donald Diecidue, a North Miami Police Department detective; and (3) Toby Wolson, a Miami-Dade Police Department "[c]riminalist." Specifically, Thompson claimed that the defendants' failure to provide him access to all 29 samples from the female rape victim: (1) had violated his due process rights by denying him (a) postconviction access to biological evidence collected in his case, (b) his right to demonstrate "actual innocence" through DNA evidence, and (c) a fair trial; and (2) had deprived him of both his due process and equal protection rights to "meaningful access to the courts." Thompson also asserted that the defendants had violated his Eighth Amendment right to be free from cruel and

3

unusual punishment, and his Sixth Amendment rights to confrontation and compulsory process. As relief for these violations, Thompson demanded access to all 29 samples.

The district court dismissed the action. Thompson appeals.

## II. Discussion

Thompson argues that he has a postconviction right under the Due Process Clause to all potentially exculpatory DNA evidence that is "favorable and material" to showing his actual innocence. Thompson claims that the 15 samples the state has failed to provide him could potentially produce a third assailant's DNA profile that does not match his DNA profile and therefore exonerate him.

As a preliminary matter, we note that Thompson has abandoned the following claims because he failed to discuss them on appeal: (1) his equal protection and due process challenges to meaningful access to the courts, (2) his Eighth Amendment claim that he was subjected to cruel and unusual punishment, and (3) his Sixth Amendment claim of deprivation of his rights to confrontation and compulsory process. *See Horsley v. Feldt*, 304 F.3d 1125, 1131 n.1 (11th Cir. 2002). Accordingly, we only address Thompson's claims (1) that he was deprived of his due process right to access 15 additional items of biological evidence for purposes of DNA testing and (2) that his trial was fundamentally unfair under

4

*Brady* because the state failed to disclose additional samples of biological evidence. *Brady v. Maryland*, 373 U.S. 83 (1963).

We review the district judge's dismissal of an *in forma pauperis* complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) *de novo* and take the well-pleaded factual allegations in the complaint as true. *Mitchell v. Farcass*, 112 F.3d 1483, 1489-90 (11th Cir. 1997). "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). A dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as a dismissal under Federal Rule of Civil Procedure 12(b)(6). *Mitchell*, 112 F.3d at 1490. Dismissal for failure to state a claim is appropriate when the facts as pleaded do not state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

A claimant is entitled to redress under 42 U.S.C. § 1983 if he can prove that a person acting under color of state law committed an act that deprived the claimant of some right, privilege, or immunity protected by the Constitution or the laws of the United States. 42 U.S.C. § 1983. "Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights." *Almand v. DeKalb Cnty.*, 103 F.3d 1510, 1512 (11th Cir.

5

1997).

*A. Due Process Right to Access Exculpatory Evidence*

Thompson first argues that he has a due process right to postconviction access to exculpatory DNA evidence. The Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

Before embarking on the analysis, we note that the Supreme Court has granted *certiorari* in a case to decide whether a convicted prisoner can seek access to biological evidence for DNA testing through 42 U.S.C. § 1983. *Skinner v. Switzer*, 130 S. Ct 3323 (May 24, 2010) (No. 09-9000). We have allowed claims seeking postconviction access to evidence for DNA testing to be brought in a § 1983 action. *See Cunningham v. Dist. Att'y's Office for Escambia Cnty*, 592 F.3d 1237 (11th Cir. 2010); *see also Dist. Att'y's Office for Third Judicial Dist. v. Osborne,* 129 S. Ct. 2308, 2318 (2009) (assuming without deciding that the prisoner's § 1983 claim seeking postconviction access to DNA evidence was not barred and stating that every Court of Appeals to consider the question since *Wilkinson v. Dotson*, 544 U.S. 74 (2005), has allowed a § 1983 claimant to proceed). Accordingly, we follow *Cunningham* and conclude that Thompson has a viable § 1983 action in seeking the release of DNA evidence. *See Cargill v.*

6

*Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997) (holding that this Court has to follow a prior panel decision until the decision is overruled by either this Court sitting *en banc* or the Supreme Court).

As a preliminary matter, Thompson does not have a substantive due process right to postconviction access to DNA evidence. *See Cunningham* 592 F.3d at 1255 (concluding that the prisoner correctly conceded that his substantive due process claim under § 1983 seeking postconviction access to biological evidence for purposes of DNA testing did not survive *Osborne*).[1] Thus, we are left with Thompson's claim that he was denied procedural due process.

The threshold question for a procedural due process claim is whether the record demonstrates that access to samples for DNA testing could theoretically "raise questions about [the defendant's] guilt." *Cunningham*, 592 F.3d at 1256-59. If there is no possibility that DNA evidence could exonerate the prisoner, no procedural due process right has been violated. If DNA evidence could exonerate the prisoner, however, we ask whether the state procedure governing postconviction access to DNA evidence is adequate. *See id.*, 592 F.3d at 1256 n.12 (quotation marks omitted). The state procedures are constitutionally adequate

---

[1] The *Osborne* Court reasoned that a substantive due process right to postconviction access to DNA evidence was not deeply rooted in history and that establishing such a right would force the Court to act as a policymaker. *Osborne*, 129 S.Ct. at 2322-23.

7

unless they "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,'" or "'transgress[] any recognized principle of fundamental fairness in operation.'" *Osborne*, 129 S. Ct at 2320 (citing *Medina v. California*, 505 U.S. 437, 446, 448 (1992)). In other words, "[f]ederal courts may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Id.* at 2320. The burden is on the prisoner to demonstrate the "inadequacy of the state-law procedures available to him in state postconviction relief." *Id.* at 2321.

We assume *arguendo* that access to the additional samples for DNA testing could theoretically allow Thompson to find exculpatory evidence.[2] We must therefore determine whether Thompson's facial and as-applied challenges to the state's procedures for access to DNA have any merit. Florida Rule of Criminal Procedure 3.853 sets the procedures for a prisoner seeking postconviction access to samples for DNA testing. Fla. R. Crim. P. 3.853 (2010).

First, Thompson fails to make the "difficult" showing that Rule 3.853 is facially invalid because Rule 3.853 contains similar requirements and limitations imposed by other DNA-testing statutes, including the postconviction statute upheld in *Osborne*. *See Osborne*, 129 S. Ct. at 2317-18, 2320-21; *Cunningham*, 592 F.3d

---

[2] A remote possibility remains that testing the additional samples will uncover a third DNA profile that does not match Thompson, proving that he was not the third assailant.

8

at 1266.  Specifically, both Rule 3.853 and the statute upheld in *Osborne* (1) require the claimant to make a sufficient showing that additional DNA testing could demonstrate his actual innocence, (2) exempt the claim from applicable time limits, and (3) provide a successful claimant access to additional DNA testing. *Compare* Fla. R. Crim. P. 3.853, *with Osborne*, 129 S.Ct. at 2317-18, 2320-21 (describing the Alaska postconviction statute).  Moreover, the federal postconviction DNA-access statute, 18 U.S.C. § 3600, which *Osborne* cites with approval, overlaps with Rule 3.853 by requiring the prisoner to assert that (1) he is actually innocent, (2) the evidence sought has not been previously tested for DNA or that subsequent DNA testing techniques could produce a more definitive result, and (3) the prisoner's identity was a disputed issue at trial.  *Compare* Fla.R.Crim.P. 3.853, *with* 18 U.S.C. § 3600.  Accordingly, we conclude that Thompson has failed to show that Rule 3.853 "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" or "transgresses any recognized principle of fundamental fairness in operation." *Osborne*, 129 S.Ct. at 2321 (quotation marks omitted).

Thompson's as-applied challenge also fails because he has not met his burden of proving that he filed a motion for access to the additional biological evidence for testing under Rule 3.853.  *See Cunningham*, 592 F.3d at 1266 (noting

9

that *Osborne* forbids, where state procedures for postconviction relief are adequate on their face, a claimant from challenging the procedures' application in practice until he has actually tried them).

*B.  Brady Claim*

Thompson also asserts that the failure to provide him access to this evidence violates the due process clause under *Brady*.  *Brady*, 373 U.S. at 87 (holding that due process requires a prosecutor to disclose material exculpatory evidence to the defendant).  To the extent that Thompson's complaint can be construed as challenging the fundamental fairness of his trial, this claim fails because a § 1983 claim cannot be used to "imply the invalidity of his conviction or sentence."  *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).  To the extent that his claim asserts a postconviction due process right under *Brady*, it also fails because the Supreme Court has held that "*Brady* is the wrong framework" to apply in assessing a prisoner's postconviction right to access exculpatory evidence.  *Osborne*, 129 S.Ct. at 2320.

Accordingly, we **AFFIRM** the district court's dismissal of Thompson's § 1983 complaint.