[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11649
Non-Argument Calendar
_____

D.C. Docket No. 0:15-cv-62552-BB

JAMES ALEXANDER CARTER,

Plaintiff -Appellant,

versus

BROWARD COUNTY SHERIFF OFFICE,
Medical Department,
DIRECTOR OF NURSING,
F. Intriago, Broward County Main Jail,
HEALTH SERVICES ADMINISTRATOR,
Lina Herran, Broward County Main Jail,
ARMOR CORRECTIONAL HEALTH SERVICES, INC.,
SERGEANT TURNER,
Shift Supervisor, Broward County Main Jail, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 3, 2017)

Before ROSENBAUM, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

James Carter, a Florida prisoner represented by counsel on appeal, appeals the district court's *sua sponte* dismissal of his 42 U.S.C. § 1983 civil-rights action for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e).  Proceeding *pro se* and *in forma pauperis* in the district court, Carter alleged that medical personnel at Broward County Main Jail (the "Jail") acted with deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, when they delayed or denied the provision of necessary medication. The district court found that Carter's allegations were insufficient to establish a claim of deliberate indifference.  After careful review, we vacate and remand for further proceedings.

## I.

According to Carter's second amended *pro se* complaint, the operative filing in this case, Carter first experienced severe chest pains and shortness of breath in February or March of 2015.  He was seen by Dr. Papillone, the medical director at the Jail, who performed an electrocardiogram ("EKG") and diagnosed that Carter had suffered a "slight heart attack."  Dr. Papillone prescribed hydrochlorothiazide and clonidine to treat Carter's high blood pressure.

2

Carter was supposed to take the blood-pressure medication twice per day: once in the morning and once in the afternoon. However, starting in April or May of 2015, Carter regularly did not receive his morning medication until 1:00 p.m., only three hours before he received his second dose at 4:00 p.m. Carter alleged that he experienced chest pain and shortness of breath when his morning medication was late, which in turn led him to believe "for months" that he was going to have a heart attack or stroke. In addition, on at least four occasions, the morning nurse failed to deliver his medication at all.

Carter alleged that these problems persisted despite numerous attempts on his part to get the Jail to fix them. A report of Carter's grievances, which he attached to his second amended complaint, reflects that he first complained about receiving late medication on June 24, 2015. In that grievance, Carter claimed that he had received late medication on the weekends for the prior four weeks, that he had five blood-pressure medications that needed to be spaced out to be effective, and that, as a result of receiving his medications late, he had chest pains for two days afterwards. The Jail responded that the issue would be researched and "handle[d] accordingly," though the grievance was closed without a response.

Then, from August to October 2015, Carter filed numerous grievances complaining about either late delivery or no delivery of his medication. On August 17, Carter complained that on August 16 he again received his morning medication

3

at 1:00 p.m.   On August 30, Carter reported that the nurse did not distribute medication at all on August 29 or 30.  On September 27, Carter complained that he was "not receiving a[.]m[.] meds because the nurse does not show up."   On October 1, Carter complained that morning medications were "not being administered as they should" and that he was being denied access to a medical-care provider.  On October 9, the Jail responded,

> Your medical records [were] reviewed and you have not been denied medical treatment.  You are rou[]tinely seen by the provider.  You were last seen on 10/07/2015 for your hypertension.  You were seen on 09/14/2015 for your lab follow-up and you were seen on 08/19/2015 in your regularly scheduled clinic with Dr. Merrit.  In regards to medication pass in your unit it will be reviewed.

On October 10, Carter appealed the denial.   An ombudsman for the Jail interviewed Carter and then responded to his appeal on October 22 as follows:

> Mr. Carter, per our conversation. I reviewed your medication administration record and discussed my findings with you. Due to an unforeseen circumstance your unit nurse did not pass meds on 8/29 and 8/30.  That issue was resolved. You reported to me that you did not receive your meds again on 9/27/15 morning shift and I have confirmed your statement.  There was no med pass on morning shift on 9/25/15.  At the time I went to see you on your housing unit, I believe on 10/15/15 you reported that you had been seen by the clinic provider on 10/7/15 and that you have been receiving all your meds. Based on your medical record review you are being followed by several providers for your medical issues.  You are not being denied access to medical.  I am closing this appeal based on that information. The details of my review have been discussed with the medical supervisor.

4

On October 13, Carter claimed that the morning nurse had been late in delivering medication since April and had failed to deliver medication on three mornings in August and September. On October 23, Carter complained that the morning nurse did not deliver medications to the unit on October 22 and that he had experienced chest pains.

A magistrate judge issued a report and recommendation ("R&R") after *sua sponte* screening Carter's second amended complaint under 28 U.S.C. § 1915(e)(2). As to the deliberate-indifference claim, the magistrate judge narrowly construed Carter's allegations as claiming that he had regularly "received his prescribed medications in [a] timely manner except on four occasions"— specifically August 29, 2015, August 30, 2015, September 27, 2015, and October 22, 2015. But apart from those dates, the magistrate judge stated, Carter's "allegations show that he has regularly been receiving medical care" at the Jail, and the grievance log indicated that "the authorities at the jail recognized the problem and attempted to correct it." The magistrate judge concluded that the fact that Carter "may have received his medication late on four occasions" amounted to no more than negligence, which was insufficient to show deliberate indifference to his medical needs.

Carter filed objections to the R&R, asserting that the magistrate judge had misconstrued the allegations in his second amended complaint. He explained that

5

his claim was not that he received late medication on four occasions, but rather that the problems of delayed medication went on for four or five months. Further, Carter asserted, the dates the magistrate judge cited were the dates on which no morning medication was provided.

The district court overruled Carter's objections and adopted the magistrate judge's R&R. The court noted that the grievance log Carter attached as an exhibit to his complaint "indicate[d] that while Defendants provided Mr. Carter with his medications in the afternoon rather than the morning on a handful of occasions and failed to provide medications on at least one occasion, prison officials acted to remedy the error." Accordingly, the district court dismissed the complaint for failure to state a claim, pursuant to § 1915(e)(2)(B)(ii), before service of process to the defendants.[1]

On appeal, Carter argues that the allegations in his second amended complaint are sufficient to show deliberate indifference to a serious medical need. He asserts that the district court misconstrued his complaint and that the instances of inadequate distribution of medication were far more frequent than the court stated. We agree and therefore vacate and remand.

---

[1] On the magistrate judge's recommendation, and over Carter's objections, the district court also dismissed as frivolous Carter's claim that he was denied access to a grievance procedure. Carter does not challenge the dismissal of this claim in his brief on appeal, so we deem this issue abandoned and affirm the dismissal of this claim. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014) (issues not briefed on appeal are abandoned).

## II.

We review *de novo* a district court's *sua sponte* dismissal for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), taking all factual allegations in the complaint to be true. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Under § 1915, district courts have discretion to dismiss, at any time, *in forma pauperis* complaints that fail to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A dismissal under § 1915(e)(2)(B)(ii) is governed by the same standard as a dismissal under Federal Rule of Civil Procedure 12(b)(6). *Mitchell*, 112 F.3d at 1490.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, the plaintiff needs to allege enough facts to make the claim "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. Exhibits attached to a complaint are considered part of the complaint and may be considered in resolving a motion to dismiss. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

7

**III.**

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291 (1976).  To prove a claim for deliberate indifference under the Eighth Amendment, a prisoner must show (1) that he had an objectively serious medical need and (2) that the prison official subjectively acted with deliberate indifference to that need. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

"[A] serious medical need is considered one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.* (internal quotation marks omitted).  Deliberate indifference has three components the plaintiff must satisfy:  he must show a prison official's "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (internal quotation marks omitted).  "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all."  *Id.*  A prison official "who delays necessary treatment for non-medical reasons may exhibit deliberate indifference."  *Id.*

Finally, "[a]n Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment." *Id.*

Here, we conclude that Carter's allegations, accepted as true and construed in the light most favorable to him, were sufficient to state a viable claim under the Eighth Amendment for deliberate indifference. First, Carter's allegations indicate that he had an objectively serious medical need. Specifically, Carter had presented to medical at the Jail complaining of chest pains and shortness of breath, and a subsequent EKG revealed that he had suffered a slight heart attack. A doctor prescribed medication for high blood pressure, which Carter was supposed to take twice per day. When he did not take his medication at the right times, he experienced chest pain and shortness of breath, and he believed that he was going to have a heart attack or a stroke. Carter's allegations plausibly establish that he had a serious medical need that had been diagnosed by a physician as mandating treatment. *See Farrow*, 320 F.3d at 1243.

Second, Carter's allegations indicate that prison officials acted with deliberate indifference to his medical needs by regularly failing to provide his blood-pressure medication as prescribed. Prison officials were subjectively aware of Carter's serious medical needs because he repeatedly complained about not receiving his medication on time or at all and explained that he experienced chest pains and shortness of breath as a result. Carter's allegations also show that prison

9

officials disregarded that risk by failing to ensure that his medication was distributed as prescribed. Carter first complained about problems with the Jail's provision of medication in June 2015, but, despite his repeated complaints, the problems persisted at least through October 2015.

As for prison officials' culpability, in light of Carter's allegations, supported by his grievance record, that the Jail waited several months to meaningfully respond to his repeated complaints about the provision of his medication and that prison officials never acknowledged, much less addressed, the alleged late delivery of the medication, we cannot say at this early stage of proceedings that Carter's allegations fail to plausibly show that prison officials' conduct went beyond negligence. *See Bingham*, 654 F.3d at 1176. Carter's allegations, liberally construed, reflect that his medication was late on more than just a "handful of occasions," as the district court stated. Carter first complained about the late delivery of medication in June 2015. By October 2015, and despite numerous complaints in the meantime, he still regularly was not receiving his medication on time and occasionally did not receive his morning medication at all.

Nor do Carter's allegations or the grievance record bear out the district court's statement that prison officials "acted to remedy the error" of his delayed medication. Though the Jail did eventually address Carter's complaints about not receiving medication on certain days, the grievance report does not indicate that

10

the issue of Carter's delayed medication was ever addressed. Moreover, the problems Carter experienced in receiving his medication appear to have continued even after the Jail investigated the issue.

We conclude from this limited record that the district court erred in dismissing Carter's complaint before any of the defendants filed a response or the parties had conducted any discovery in this case. Carter's allegations plausibly suggest that at least some of the prison officials knowingly delayed or interfered with the provision of Carter's prescribed medication and, in doing so, displayed deliberate indifference to his serious medical needs. *See Bingham*, 654 F.3d at 1176. Because the district court addressed Carter's claims generally as against all defendants, we do not attempt to further delineate which particular defendants may be liable under this theory. We leave these matters to be addressed as appropriate on remand.

Accordingly, the district court erred by *sua sponte* dismissing this claim under § 1915(e)(2)(B)(ii). We therefore vacate and remand for further proceedings.

**VACATED AND REMANDED.**